**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDRICK R. ROSS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13970** |
| **JERRY GOODWIN, WARDEN** | **SECTION: "S"(1)** |

**REPORT AND RECOMMENDATION**

Petitioner, Fredrick R. Ross, a state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, his application should be **DISMISSED WITH PREJUDICE**.

On December 9, 2013, petitioner pleaded guilty in Louisiana state court to the crimes of manslaughter, attempted second degree murder, and possession of a firearm by a convicted felon. On that same date, he was sentenced to forty years on the manslaughter conviction, forty years on the attempted murder conviction, and twenty years on the firearm conviction; it was ordered that those sentences be served concurrently.[1]

On August 11, 2014, petitioner sent the state district court judge a letter asking that he reconsider petitioner's sentence.[2] Petitioner followed that up with an additional letter on August

[1] State Rec., Vol. 1 of 11, transcript of December 9, 2013; State Rec., Vol. 1 of 11, minute entry dated December 9, 2013; State Rec., Vol. 1 of 11, guilty plea form.

[2] State Rec., Vol. 1 of 11, letter from petitioner to Judge Robert A. Pitre, Jr., dated August 11, 2014. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to petitioner's *pro se* filings in the instant case, the Court will simply use the signature dates on the documents as the filing dates, in that the documents were obviously placed in the mail no earlier than the dates they were signed.

16, 2014,[3] and a formal motion for reconsideration of sentence on August 18, 2014.[4] The district court denied relief on September 5, 2014.[5]

On October 24, 2014, petitioner filed with the state district court an "Application for DNA Testing Pursuant to C.Cr.P. Article 926.1."[6] That application was denied on November 6, 2014.[7]

On June 7, 2015, petitioner filed an application for post-conviction relief with the state district court.[8] The district court denied relief on June 26, 2015,[9] as did the Louisiana Fifth Circuit Court of Appeal on October 7, 2015.[10] On March 14, 2016, the Louisiana Supreme Court then refused to consider petitioner's related writ application because it was not timely filed.[11]

On August 7, 2017, petitioner filed with the state district court a motion to correct an illegal sentence,[12] which was denied on August 16, 2017.[13] His related writ applications were thereafter denied by the Louisiana Fifth Circuit Court of Appeal on November 7, 2017,[14] and the Louisiana Supreme Court on January 8, 2019.[15]

In the interim, petitioner also filed with the state district court a motion to withdraw his guilty plea on September 26, 2018.[16] That motion was denied on October 3, 2018.[17] His related

[3] State Rec., Vol. 1 of 11, letter from petitioner to Judge Robert A. Pitre, Jr., dated August 16, 2014.
[4] State Rec., Vol. 1 of 11, "Motion for Reconsider Sentence."
[5] State Rec., Vol. 1 of 11, Order dated September 5, 2014.
[6] State Rec., Vol. 1 of 11, "Application for DNA Testing Pursuant to C.Cr.P. Article 926.1."
[7] State Rec., Vol. 1 of 11, Order dated November 6, 2014.
[8] State Rec., Vol. 1 of 11, "Uniform Application for Post-Conviction Relief."
[9] State Rec., Vol. 2 of 11, Order dated June 26, 2015.
[10] Ross v. State, No. 15-KH-562 (La. App. 5th Cir. Oct. 7, 2015); State Rec., Vol. 5 of 11.
[11] State *ex rel.* Ross v. State, 186 So. 3d 655 (La. 2016); State Rec., Vol. 8 of 11.
[12] State Rec., Vol. 3 of 11, "Motion to Correct an Illegal Sentence."
[13] State Rec., Vol. 3 of 11, Order dated August 16, 2017.
[14] Ross v. State, No. 17-KH-595 (La. App. 5th Cir. Nov. 7, 2017); State Rec., Vol. 6 of 11.
[15] State *ex rel.* Ross v. State, 260 So. 3d 590 (La. 2019); State Rec., Vol. 10 of 11.
[16] State Rec., Vol. 3 of 11, "Motion to Withdraw an Unconstitutional Guilty Plea."
[17] State Rec., Vol. 3 of 11, Order dated October 3, 2018.

writ applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal on December 10, 2018,[18] and the Louisiana Supreme Court on October 1, 2019.[19]

On January 19, 2019, petitioner sent a letter to the Clerk of the United States District Court for the Western District of Louisiana, which was construed by that court as a petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 and transferred to this Court. Petitioner was later notified that he must either pay the required filing fee or submit an application to proceed *in forma pauperis*, and he was warned that the matter would be dismissed if he failed to do so. In response, petitioner sent a letter to the Court explaining that he understood that his federal petition would be dismissed and stating that he intended to file a new application "at a later date." Accordingly, that federal application was dismissed without prejudice on April 30, 2019.[20]

On November 18, 2019, petitioner then filed the instant federal application.[21] The state filed a response asserting a variety of defenses, including that the federal application should be dismissed because it was not timely filed.[22] Although petitioner filed a reply to the state's response, he did not address the state's argument that his federal application was untimely.[23] He then subsequently filed a motion asking that this Court stay these federal proceedings while he returned to state court to file an amended and modified motion to withdraw his guilty plea.[24]

---

[18] Ross v. State, No. 18-KH-649 (La. App. 5th Cir. Dec. 10, 2018); State Rec., Vol. 7 of 11.

[19] Ross v. State, 280 So. 3d 166 (La. 2019); State Rec., Vol. 3 of 11.

[20] See Ross v. Unnamed Respondent, Civ. Action No. 19-779, 2019 WL 1929967 (E.D. La. Apr. 8, 2019), adopted, 2019 WL 1930746 (E.D. La. Apr. 30, 2019).

[21] Rec. Doc. 3. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner has declared under penalty of perjury that his application was placed in the prison mailing system on November 18, 2019. Rec. Doc. 3, p. 1.

[22] Rec. Doc. 10.

[23] Rec. Doc. 11.

[24] Rec. Doc. 12.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In its response, the state argues that Subsection A is controlling in the instant case,[25] and petitioner does not argue otherwise.[26] Regarding that subsection, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes

[25] Rec. Doc. 10, p. 9.

[26] See, e.g., Rec. Doc. 3-1, pp. 13-14 (answer to question No. 18).

> final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."* Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

Here, as noted, petitioner pleaded guilty and was sentenced on December 9, 2013. Because he did not file a direct appeal within the thirty days allowed by state law,[27] his state criminal judgment became final no later than **January 8, 2014**. Accordingly, his period for seeking federal habeas corpus relief commenced on that date and then expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

No fewer than two hundred fourteen (214) days of petitioner's federal limitations period elapsed before he first arguably tolled the period on August 11, 2014, by seeking reconsideration

---

[27] Under Louisiana law, a criminal defendant has thirty days to file a motion to appeal his conviction or sentence. La. Code Crim. P. art. 914.

of his sentence in the state district court.[28] As noted, the district court then denied relief on September 5, 2014,[29] and, therefore, tolling ceased no later than October 6, 2014, when petitioner's period for seeking review of that denial expired. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending when the time for supervisory review expires).[30]

When the limitations period then resumed running at that point, petitioner had one hundred fifty-one (151) days of the period remaining. After an additional seventeen (17) days of the federal limitations period then elapsed, it was tolled a second time by petitioner's filing of his "Application for DNA Testing Pursuant to C.Cr.P. Article 926.1" on October 24, 2014.[31] That application was denied by the state district court on November 6, 2014,[32] and so tolling then again ceased on December 8, 2014, when petitioner's period for seeking review of that denial expired.[33]

---

[28] This assumes that tolling commenced on August 11, 2014 (the date petitioner sent his first letter to the district judge asking that he reconsider petitioner's sentence), rather than on August 18, 2014 (the date he followed up his letter with a formal motion). Most likely, that assumption is overly generous, in that the federal limitations period is tolled only by "a properly filed application for State post-conviction or other collateral review …." 28 U.S.C. § 2244(d)(2). However, in its response, the state gives petitioner the benefit of that assumption, see Rec. Doc. 10, p. 10, and this Court will do the same, especially given that petitioner's federal application is untimely regardless.

[29] State Rec., Vol. 1 of 11, Order dated September 5, 2014.

[30] A litigant has thirty days to seek review by a Louisiana Court of Appeal. See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007). In this case, the thirtieth day of that period fell on a Sunday, and, therefore, petitioner had until Monday, October 6, 2014, to file a writ application with the Louisiana Fifth Circuit Court of Appeal. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[31] State Rec., Vol. 1 of 11, "Application for DNA Testing Pursuant to C.Cr.P. Article 926.1." The United States Fifth Circuit Court of Appeals has held that "a motion to test DNA evidence under Texas Code of Criminal Procedure article 64 constitutes 'other collateral review' and thus tolls the AEDPA's one-year limitations period under 28 U.S.C. § 2244(d)(1)." Hutson v. Quarterman, 508 F.3d 236, 240 (5th Cir. 2007). In reaching that conclusion, the Fifth Circuit reasoned that such a motion filed in a Texas state court seeks "to challenge that judgment by potentially requiring that the trial court hold a hearing to determine whether it was reasonably probable that the convicted person would have been acquitted given the DNA results"; therefore, such a motion is by its very nature "a request for 'review' of the judgment pursuant to which [the petitioner] is incarcerated." Id. at 239. Because petitioner's federal application is untimely regardless, this Court will assume that the same is true of a similar motion filed under Louisiana law and simply toll the limitations period while petitioner's motion was pending.

[32] State Rec., Vol. 1 of 11, Order dated November 6, 2014.

[33] Because the thirtieth day of that period fell on a Saturday, petitioner had until Monday, December 8, 2014, to file a related writ application with the Court of Appeal. See *supra* note 30.

The federal limitations period then once again resumed running, now with one hundred thirty-four (134) days remaining. As a result, petitioner had only until **April 21, 2015**, to file his federal application or, barring that, to again toll the federal limitations period. However, as noted, he did not file the instant federal application until November 18, 2019. Moreover, he clearly is not entitled to further **statutory** tolling because he had no other applications for post-conviction or other collateral review[34] pending before the state courts on or before April 21, 2015.[35] Therefore, the instant federal application was untimely filed[36] unless he is entitled to the other form of tolling sometimes available, namely, **equitable** tolling.

The United States Supreme Court has expressly held that the AEDPA's statute of limitations is also subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "equitable tolling is unavailable in most cases …." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows

[34] Out of an abundance of caution, the Court notes that petitioner filed several motions seeking transcripts and other documents during the applicable one-year period. However, those motions have not been recounted or considered herein because they are immaterial to the timeliness calculations. Motions seeking such records are not considered applications "for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

[35] Although petitioner subsequently filed another state post-conviction application in 2015, a motion to correct an illegal sentence in 2017, and a motion to withdraw his guilty plea in 2018, those filings did not toll the federal limitations period. State court applications filed after expiration of the federal limitations period are of no consequence for tolling purposes. Simply put: once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

[36] Obviously, petitioner's January 19, 2019, letter to the Clerk of the United States District Court for the Western District of Louisiana, which was construed by that court as a petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254, transferred to this Court, and later dismissed because petitioner failed to pay the filing fee or move to proceed *in forma pauperis*, was thus also untimely filed.

both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence whatsoever demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.[37]

Lastly, the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ...

[37] In its response, the state argues that if petitioner's federal application is broadly construed so as to suggest that equitable tolling is warranted due to his mental illness, associated treatment, and/or *pro se* status, then he has not established that such tolling is warranted on those bases. See Rec. Doc. 10, pp. 11-13. The application does not appear to make such an argument. See, e.g., Rec. Doc. 3-1, pp. 13-14 (answer to question No. 18). Petitioner further fails to address this issue in his Reply. Rec. Doc. 11. To the extent competency is raised in the Reply, it merely reiterates petitioner's claims that his plea was obtained unconstitutionally as he was incompetent or under the influence of powerful psychotropic drugs, and that he was denied a competency hearing prior to trial. Id. at pp. 3-6. As noted above, petitioner wholly fails to respond to the state's untimeliness arguments. However, if the District Judge concludes otherwise, then it must be noted that petitioner has not established that equitable tolling applies.

As for petitioner's mental illness and associated treatment, although "mental illness *may* toll AEDPA's statute of limitations, it does not do so as a matter of right." Smith v. Kelly, 301 F. App'x 375, 378 (5th Cir. 2008). Rather, in order for a petitioner's mental illness to warrant equitable tolling, he "(i) must make a threshold showing of incompetence and (ii) must show that this incompetence affected his ability to file a timely habeas petitioner [sic]." Jones v. Stephens, 541 F. App'x 499, 505 (5th Cir. 2013). Therefore, "[t]o establish the effects of his mental illness, including his medication, entitles him to equitable tolling, [a] petitioner must show that the circumstances prevented him from seeking federal *habeas corpus* relief in a timely manner." Noble v. Cooper, No. 11-2866, 2012 WL 1135857, at *1 (E.D. La. Apr. 4, 2012) (Lemmon, J.). Moreover, if a petitioner was mentally capable of filing pleadings seeking post-conviction relief in the state courts during the applicable one-year period, then that fact obviously undercuts any suggestion that he was mentally incapable of similarly seeking habeas corpus relief in federal court. Id. As noted, in this case, petitioner sought post-conviction relief repeatedly in the state courts, including during the relevant one-year period. Therefore, any argument that his alleged impediments were so insurmountable as to prevent him from seeking relief in federal court is too speculative to succeed. See Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *3-5 (E.D. La. July 29, 2011); Williams v. Quarterman, Civ. Action No. H-08-2162, 2009 WL 7326065, at *5 (S.D. Tex. Aug. 24, 2009). There is simply no basis for finding that petitioner's mental illness and associated treatment constituted an "extraordinary circumstance" which "stood in his way and *prevented* timely filing." Holland, 560 U.S. at 649 (emphasis added).

Likewise, it is beyond peradventure that a petitioner's *pro se* status does not warrant equitable tolling. See, e.g., United States v. Petty, 530 F.3d 361, 365 (5th Cir. 2008) ("Proceeding *pro se* is alone insufficient to equitably toll the AEDPA statute of limitations."); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance [warranting equitable tolling] because it is typical of those bringing a § 2254 claim."); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").

or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). That said, the Supreme Court took care to note: "We caution, however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

By entering his unconditional guilty pleas, petitioner has already conceded under oath that he in fact committed and was guilty of the crimes of which he stands convicted. Therefore, even if McQuiggin applies in the context of a guilty plea, petitioner would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324. Here, petitioner has presented no new evidence of the type or caliber referenced in Schlup. Accordingly, he has not met "the threshold requirement" for McQuiggin to apply. McQuiggin, 569 U.S. at 386. As a result, the "actual innocence" exception does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than **April**

**21, 2015**, in order to be timely. His federal application was not filed until **November 18, 2019**, and, therefore, it is untimely.

**Motion to Stay**

Almost a year after filing this federal application, petitioner filed a motion asking that the Court stay these proceedings.[38] Where a petitioner is trying in good faith to exhaust his remedies in state courts but fears that his federal limitations period will expire while that process is playing out, he may file a "protective" petition in federal court and ask the federal court to stay the federal habeas proceedings until his state remedies are exhausted. Pace v. DiGuglielmo, 544 U.S. 408, 416-17 (2005). However, that stay procedure "is limited to *timely* petitions." Parmley v. Norris, 586 F.3d 1066, 1073 (8th Cir. 2009). Where, as here, a petitioner's federal limitations period expired before he filed his "protective" petition, a stay is futile because he no longer has anything left to "protect." See, e.g., Ceja v. Small, 438 F. App'x 563, 564 (9th Cir. 2011); Dang v. Sisto, 391 F. App'x 634, 635 n.9 (9th Cir. 2010).

**RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Frederick Ross be **DISMISSED WITH PREJUDICE** as untimely filed.

It is **FURTHER RECOMMENDED** that petitioner's motion to stay these proceedings, Rec. Doc. 12, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[38] Rec. Doc. 12.

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[39]

New Orleans, Louisiana, this 28th day of April, 2021.

Janis van Meerveld

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

[39] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.